UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Daniel Rashada,

                              Plaintiff,

                                                          **Hon. Hugh B. Scott**

                                                          11CV873A

                    v.                                    **Decision
                                                          &
                                                          Order**

City of Buffalo, Corey Krug, and
William Rezabek,

                              Defendants.


        Before the Court are the plaintiff's motion for payment of expenses relating to service

(Docket No. 9) and the plaintiff's motion to compel discovery (Docket No. 16).


                                    **Background**

        The plaintiff, Daniel Rashada ("Rashada"), alleges that his rights were violated by the

defendants when he was detained by Corey Krug ("Krug"), a Buffalo Police Officer. Rashada

claims that Krug detained him, and perceiving some sort of disrespect, Krug and Officer William

Rezabek ("Rezabek") assaulted him, including by beating him with a flashlight. (Docket No. 1

at ¶1). According to Rashada, on February 4, 2011, he was walking down Bissell Avenue at

approximately 10:30 p.m. when he was stopped by Krug. (Docket No. 1 at ¶ 17). Several police

officers were allegedly on Bissell Avenue looking for a black male wearing a gray hoodie and

                                        1

blue jeans. (Docket No. 1 at ¶ 14). The plaintiff asserts that he was listening to music through earphones and was wearing a brown sweater, brown shoes, brown pants, and was not wearing a hoodie. (Docket No. 1 at ¶ 15). The plaintiff alleges that as he walked past Krug, Krug ordered him to stop, and asked him his name and where he was going. Rashada claims that he gave his name, pointed to his home three houses down the block and stated that he was going there. (Docket No. 1 at ¶ 17). Rashada states that Krug appeared to find the plaintiff's answers aggravating and directed Rashada to spread his arms and legs against the car. (Docket No. 1 at ¶¶ 18-20). Rashada claims that Krug then kicked his leg to the side and pulled the plaintiff backward, making him fall and hit his head on the ground. Krug then allegedly got on top of Rashada, put his knee in plaintiff's chest making it difficult for Rashada to breath. The plaintiff asserts that Krug then turned the plaintiff over onto his stomach, and cuffed his hands behind his back. According to Rashada, at about this time, Rezabek arrived to assist Krug. Rashada states that Krug allegedly struck him in the face with his flashlight. Krug and Rezabek then allegedly "dragged" the plaintiff to Krug's police car by his neck, choking him. The plaintiff claims that the defendants emptied his pockets and placed him in the back of Krug's patrol car. (Docket No. 1 at ¶¶ 21-28). Krug and Rezabek allegedly questioned Rashada concerning an over-the-counter energy pill they found on his person. Rashada alleges that Krug stated that since they could not find the person they were looking for, they would take Rashada to jail instead. (Docket No. 1 at ¶¶ 29-30). Rashada was taken to a police station, booked and then held overnight at the Erie County Holding Center. The plaintiff claims that Krug signed a complaint falsely charged him with criminal possession of a controlled substance, promoting prison contraband, obstructing governmental administration, and possession of a controlled substance outside its original

2

container. (Docket No. 1 at ¶¶ 33-39). The plaintiff states that he was "arraigned, at which time the charges brought against him were dismissed." (Docket No. 1 at ¶ 42). Rashada states that as a result of the criminal charges, he spent a night in jail and missed a day of work. (Docket No. 1 at ¶ 41).

The plaintiff asserts the following claims pursuant to 42 U.S.C. §1983: excessive force [Count 1]; municipal liability [Count 2], false arrest [Count 3], malicious prosecution [Count 4]; as well as the following state law claims: assault and battery [Count 5], common law false arrest [Count 6], common law malicious prosecution [Count 7]. (Docket No. 1 at ¶¶ 43-89).

**Failure to Waive Service by Mail**

Prior to commencing this action, counsel for the plaintiff attempted to have defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. (Docket No. 9-1 at ¶ 4). Parham asserts that he mailed a request to waive service, along with a copy of the complaint, two copies of the waiver form and a self-addressed stamped envelope to defendants' Krug and Rezabek (Docket No. 9-1 at ¶¶ 5-6). Because neither individual defendant waived service pursuant to Rule 4(d), the plaintiff incurred the cost of having personal service made upon Krug and Rezabek. (Docket No. 9-1 at ¶¶7-10).[1]

---

[1]   The plaintiff asserts that personal service was completed upon Krug at his home. However, three unsuccessful attempts were made to serve Rezabek at his residence. (Docket No. 9-1 at ¶ 9). According to the plaintiff, on February 3, 2012 an answer was filed in this matter on behalf of all defendants, including Rezabek. Because an answer had been filed on behalf of Rezabek without asserting any jurisdictional or service related defenses, the plaintiff ceased further attempts to serve Rezabek. (Docket No. 9-1 at ¶ 11). The docket does not reflect the proof of service of a summons on any defendant in this case. See Rule 4(*l*).

The plaintiff has filed a motion seeking reimbursement for costs associated with the service of process on the individual defendants in this case. (Docket No. 9).  The plaintiff seeks $681.83 which includes both the costs of service and the attorneys fees incurred in connection with the instant motion. (Docket No. 9-1 at ¶ 15). Rule 4(d) allows a party to request a defendant to waive the personal service of a summons. Rule 4(d) provides:

> An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons.[2]

Rule 4(d) was added to eliminate the costs of service of a summons on many parties and to foster cooperation among adversaries and counsel. See Advisory Committee Notes, 1993 Amendment, Subdivision (d). If a defendant subject to Rule 4(d) fails to waive service, the Rule provides that the Court must assess the costs of service against that defendant. In this regard, Rule 4(d)(2) states:

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:
> (A) the expenses later incurred in making service; and
> (B) the reasonable expenses, including attorney's fees, of any

_____

[2]   Rule 4(d)(1) requires that the notice and request must: (A) be in writing and be addressed:(i) to the individual defendant; or (ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process; (B) name the court where the complaint was filed; (C) be accompanied by a copy of the complaint, two copies of a waiver form, and a prepaid means for returning the form; (D) inform the defendant, using text prescribed in Form 5, of the consequences of waiving and not waiving service; (E) state the date when the request is sent; (F) give the defendant a reasonable time of at least 30 days after the request was sent--or at least 60 days if sent to the defendant outside any judicial district of the United States--to return the waiver; and (G) be sent by first-class mail or other reliable means. The defendants do not contest that the notice and request in this case meets these requirements.

motion required to collect those service expenses.

Typically, individuals are served pursuant to Rule 4(e) which provides that for the service of an individual within a judicial district of the United States.  However, the defendants' assert that they have been sued in their "official capacity" and that in such cases service is said to have been made pursuant to Rule 4(j).  Thus, the defendants argue that the waiver and cost provisions expressly set out in Rule 4(d) do not apply to them. It is not disputed that the municipal defendant was served pursuant to Rule 4(j); is not required to waive; and is not subject to costs for failure to waive under Rule 4(d).

The defendants rely on Cupe v. Lantz, 470 F.Supp.2d 136 (D.Conn. 2007). (Docket No. 13 at page 2). In Cupe, the Court cited to Chapman v. N.Y. State. Div. for Youth, 227 F.R.D. 175, 179-180 (N.D.N.Y.2005) which held that the service of employees of a governmental entity was made under Rule 4(j), not Rule 4(e). Chapman, 227 F.R.D. at 179.  The Court in Chapman then referred to the Advisory Committee's Notes to the 1993 Amendment to Rule 4 as stating that "for public policy reasons, neither governmental agencies nor their employees or officials are obligated to comply with a request for waiver nor will they be confronted with bearing the costs of the service of process. ... In this respect, a state official sued in an 'official' capacity is not subjugated to this waiver of service mandate." Chapman, 227 F.R.D. at 179-180.  Other  courts have held that police officers or corrections officers, being sued in their official capacity, are not subject to the waiver and cost provisions of Rule 4(d), because they are construed to have been served under Rule 4(j). See Moore v. Hosemann, 591 F.3d 741, 746–747 (5th Cir.2009)(state officers sued in their official capacity are served under Rule 4(j); and are not subject to the mandatory waiver-of-service provisions of rule 4(d)); Powers v. Collins, 2010 WL 3526518, *2

(S.D.Ohio,2010)(A suit against an official in his official capacity is not a suit against the official

personally, for the real party in interest is the entity. ... Thus, arguably, service on a defendant

sued in his official capacity must be made under Rule 4(j)).[3]

The plaintiff's complaint does not state whether the individual defendants are being sued

in their individual or official capacity, or in both capacities. In Schultz v. Egan, 103 Fed.Appx.

437, 442 (2d. Cir. 2004), the Court held that "a plaintiff who has not clearly identified in her

complaint the capacity in which the defendant is sued should not have the complaint

automatically construed as focusing on one capacity to the exclusion of the other." citing Frank

v. Relin, 1 F.3d 1317, 1326 (2d Cir.1993).  It would appear that the plaintiff has asserted some

claims that may typically be alleged against defendants in both their individual and official

capacity, such as claims under §1983. Other claims, such as the plaintiff's punitive damages

claim, could only be asserted against the defendants in their individual capacity.  New Windsor

Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101 (2d. Cir. 2006); Ivani Contracting

Corp. v. City of New York, 103 F.3d 257 (2d. Cir. 1997).  However, the plaintiff also includes a

---

[3]   This issue has not been addressed by the Second Circuit. It should be noted that other courts have held that state officials must be served under Rule 4(e) even when sued in their official capacity and are subject to the waiver and cost provisions of Rule 4(d). Smith v. California State Prison-Sacramento, 2011 WL 5511074 (E.D.Cal 2011)(The Court found that defendants Baker, Bal, Harvey, Hontz, Macomber, Masuret, Mini, Schroeder and Woods were given the opportunity required by Rule 4(d)(2) to waive service and failed to comply with the request. Therefore, reimbursement of the United States Marshal for cost of service on these defendants appears to be appropriate); Keating v. University of South Dakota, 386 F.Supp.2d 1096 (D.S.D. 2005)(costs of service imposed upon defendants, members of the faculty sued only in their official capacity, who all were served with a waiver of service of summons in accordance with Rule 4, and did not show cause for failing to waive service.); Marcello v. Maine, 238 F.R.D. 113, 115 (D.Me.2006) (holding that service of process for public employees sued in their official capacities is governed by the rule applicable to serving individuals.

municipal liability claim under <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 694 (1977).

Such a claim must be predicated upon the conduct of the individual defendants in their official

capacities. See <u>Williams v. Davis</u>, 200 F.3d 538 (8th Cir. 2000) interpreting <u>Monell</u> as holding

that a § 1983 liability attaches to government officials acting in their official capacity only for

constitutional deprivation resulting from execution of official policy or custom);  <u>Estate of Sims</u>

<u>ex rel. Sims v. County of Bureau</u>, 506 F.3d 509 (7th Cir. 2007)(The liability of the Sheriff's

Department and of the County is derivative of Thompson's official-capacity liability, and the

official-capacity liability is subject to holding in <u>Monell</u> that "a local government may not be

sued under § 1983 for an injury inflicted solely by its employees or agents." ... In order to state a

§ 1983 claim against a municipality, the complaint must allege that an official policy or custom

not only caused the constitutional violation, but was "the moving force" behind it.); <u>Popham v.</u>

<u>City of Kennesaw</u>, 820 F.2d 1570 (11th Cir. 1987)(Citing <u>Monell</u>, the Court found that although

plaintiff sued defendants "in both their official and individual capacities, ... the jury found that

the City did not authorize or ratify the acts of the four officers. That fact conclusively indicates

that the defendants were found liable in their individual capacity only. Whereas personal-capacity

suits impose liability directly on government officials for actions taken under color of state law,

an official-capacity suit is in actuality a suit  against the governmental entity itself.)

    The fact that the complaint in this case fails to state whether the defendants are being

sued in their individual or official capacity unnecessarily causes confusion as to the nature of the

action. Under the circumstances in this case, the defendants have demonstrated good cause to

believe that they were being sued in their official capacity and that the waiver provisions of Rule

4(d) did not apply.  The motion for the costs and fees associated with personal service upon the

individual defendants in this case is denied.


**Motion to Compel**

The plaintiff seeks to compel the defendants to produce various documents from the

individual defendant's personnel files. (Docket No. 16).  The plaintiff requests the following

types of documents: prior alleged incidents or complaints about the use of force, racial

insensitivity, improper arrests, improper detentions, improper prosecutions, dishonesty or

corruption; formal complaints or lawsuits alleging misconduct; documents relating to individuals

injured while being arrested by the defendants; performance evaluations; witness statements

regarding the use of force by the defendants; notes, memoranda or supervisory reports relating to

the use of force by the defendants; and documents relating to any investigation or disciplinary

action taken as a result of the use of force by the defendants. (Docket No. 16-1 at ¶ 7).

The defendants oppose the motion on the grounds that some of the requests are overly

broad (Docket No. 18 at ¶ 7) and that the material being sought is protected by §50-a of the New

York State Civil Rights Law. (Docket No. 18 at ¶ 8).  In federal civil rights cases, issues of

privilege are governed by federal, not state, law.  It is undisputed that under federal law, New

York Civil Rights Law § 50-a does not prohibit discovery of police personnel documents. Martin

v. Lamb, 122 F.R.D. 143, 146 (W.D.N.Y. 1988 ).  That does not mean that the state statute is to

be given no effect. According to the New York State Court of Appeals, the legislative intent

underlying the enactment of §50-a was enacted to prevent time consuming and perhaps vexatious

investigation into irrelevant collateral matters in the contest of a civil or criminal action, and to

avoid embarrassment and harassment of testifying officers by cross-examination concerning

8

"unsubstantiated and irrelevant" matters in their personnel files.  See Matter of Capital Newspapers v. Burns, 67 N.Y.2d 562 (1986). Generally, the Court will direct the production of documents contained in the personnel file of an officer only if the documents are relevant and involved disciplinary action taken against the officer.  See Diaz v. Goord, 2007 WL 2815735 (W.D.N.Y. 2007)(Payson, M.J.)(directing disclosure of documents relating to disciplinary action imposed on the defendants in connection with allegation of excessive force); Wright v. Goord, 2008 WL 2788287 (W.D.N.Y. 2008)(Payson, M.J.)(directing search of personnel files for documents relating to disciplinary action taken against defendants based upon the use of excessive force). It is unlikely that documents relating to unsubstantiated claims of excessive force would lead to admissible evidence. See Crenshaw v. Herbert, 409 Fed.Appx. 428 (2d. Cir. 2011)(the district court did not abuse its discretion by denying plaintiff's motion to compel production of defendant's personnel file; the court properly relied on defense counsel's affirmation that the file contained no relevant disciplinary records; even if evidence of a prior *substantiated* excessive force investigation existed, on the facts of the particular case before us such evidence would be inadmissible to show that defendant acted violently in this instance). Crenshaw, 409 Fed.Appx. at 430 citing Fed.R.Evid. 404(b). See also DiRico v. City of Quincy, 404 F.3d 464 (1st Cir. 2005)(district court in arrestee's § 1983 action against police officer for injuries sustained in arrest did not plainly err in excluding evidence of an earlier arrest by officer that resulted in a complaint of use of excessive force; evidence had no special relevance to any issue in action, evidence relating to a single, unsubstantiated claim of use of excessive force had limited probative value, and admission would have created danger that jury would render verdict on improper basis that officer was prone to engaging in violent behavior.).

In light of the above, the defendants are directed to produce only those documents relating to any claims of excessive use of force, improper arrest, improper detention, improper prosecution, or racial insensitivity involving the defendants which have been substantiated upon the conclusion of an internal administrative investigation or court proceeding. ***Any information produced by this directive, shall be used only for the purposes of this case and the disclosure shall be restricted to attorneys eyes only in this case.*** By directing the production of this information, the Court does not make any finding as to its admissibility at trial. A determination relating to admissibility shall be made by the Judge presiding over any trial in this case. To the extent the defendants are directed to produce the documents as discussed above, the documents shall be produced to the plaintiff within 20 days of the date of this Order.

So Ordered.

/s/ Hugh B. Scott

United States Magistrate Judge
Western District of New York

Buffalo, New York
February 6, 2013